FICKLEN *v.* BAKER.

PATENTS; INTERFERENCE; RIGHT TO MAKE CLAIMS; AMENDMENTS.

1. Amendments will only be permitted to relate back to the date of filing of the original application, where they can be clearly sustained on the claims and specification as originally made. An enlargement of the original specifications will not be permitted which will interfere with other inventors who have acquired intervening rights. (Following *Manly* v. *Williams,* 37 App. D. C. 194.)

2. Where the original disclosures of the junior party to an interference relating to an improvement in concrete pavements showed that he was seeking the creation of expansion joints by means of metal plates extending through the concrete and resting on the road base, while those of the senior party showed he was seeking to protect the surface of the concrete at the expansion joints, and the counts of the issue called for reinforcing means supported by the concrete out of engagement with the earth roadbed, it was *held,* that the

588          FICKLEN v. BAKER.

fact that the junior party's original specifications concluded with
the words, "for the construction of expansion joints the plates are
preferably made of a width to reach through the entire depth of a
pavement, but it is optional to make them of lesser width where
the character of the pavement permits," did not entitle him to
amend his application by the addition of claims corresponding to
the counts of the issue, and that whether certain experiments made
by him had disclosed the invention of the issue was immaterial.

No. 1149.   Patent Appeals.   Submitted March 12, 1918.   Decided
April 1, 1918.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference proceeding.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from the decision of the Commissioner of
Patents in an interference proceeding.

Appellant William E. Ficklen, the senior party, filed his
application August 21, 1909, on which he obtained a patent
June 2, 1914.   Appellee Robert D. Baker, the junior party,
filed his application February 16, 1910, which was sent to issue
April 7, 1914.   The issuance of the patent, however, was sus-
pended at the instance of Baker, who filed a substituted specifi-
cation in July, 1914, in which he copied Ficklen's first three
claims, on which this interference was declared.

The invention of the issue relates to a concrete pavement pro-
vided with expansion joints extending from the top of the
pavement to the roadbed, and reinforcing means embedded in
the edges of the concrete blocks at the joints.   The Commis-
sioner properly has defined the reinforcing means as "limited
to reinforcing means which are supported by the concrete out of
engagement with the earth roadbed."

The counts of the issue are as follows:

"1. A pavement comprising an earth roadbed, a crust sup-
ported directly on said roadbed, and comprising a plurality of
concrete sections of relatively large area separated from each
other by expansion joints extending from the top of the pave-
ment to the roadbed, and reinforcing means embedded in and

carried by and continuing along the upper portions of the edges of the concrete sections at the joints which require reinforcement.

"2. A pavement comprising an earth roadbed, a crust supported directly on said roadbed, and comprising a plurality of concrete sections of relatively large area separated from each other by expansion joints extending from the top of the pavement to the roadbed, said sections being formed with shoulders within the expansion joints, and reinforcing means embedded in and carried by and continuing along the upper portions of the edges of the concrete sections at the joints which require reinforcement, said reinforcing means consisting of metal strips located on edge within the expansion joints and resting upon said shoulders formed in the concrete.

"3. A pavement comprising an earth roadbed, a crust supported directly on said roadbed, and comprising a plurality of concrete sections of relatively large area separated from each other by expansion joints extending from the top of the pavement to the roadbed, and reinforcing means embedded in and carried by and continuing along the concrete sections at the joints which require reinforcement, said reinforcing means consisting of metal strips set into the upper surfaces of the concrete sections along the expansion joints."

The following portions of the drawings of the respective parties are sufficient to illustrate the issues here involved:

Figures 3 and 6 of Baker's original application:

Fig. 3                      Fig. 6

Figures 3, 3a, and 6 of Baker's substitute application:

Figures 5 and 6 of Ficklen's application on which patent was issued:

The right of Baker to amend his specifications after the issuance of the Ficklen patent to include figure 3a was brought before the Commissioner of Patents on an order to show cause why the drawing in the Baker application should not be restored to its original form. Ficklen also appealed from the refusal of the Examiner of Interferences to transmit a motion to dissolve.

*Mr. William H. C. Clarke,* *Mr. C. C. Stauffer,* and *Mr. George H. Gilman,* for the appellant, in their brief cited:

*Charney* v. *Clauss,* 116 O. G. 597; *Christenson* v. *Noyes,* 15

App. D. C. 94; *Coffin* v. *Ogden*. 18 Wall. 120; *Cooper* v. *Downing*, 45 App. D. C. 345; *Curtis* v. *Ledmarck*, 37 App. D. C. 322; *Eastman* v. *New York*, 134 Fed. 845; *Elizabeth* v. *Nicholson Co.* 97 U. S. 126; *Gilman* v. *Hirson*, 26 App. D. C. 409; *Gordon* v. *Wentworth*, 130 O. G. 2065; *Greene* v. *Benners*, 117 O. G. 2631; *Griffin* v. *Swenson*, 80 O. G. 919; *Hassam Co.* v. *Consolidated Co.* 215 Fed. 114; *Hunter* v. *Miller*, 50 O. G. 1765; *Re Mraz*, 36 App. D. C. 435; *Mead* v. *Davis*, 31 App. D. C. 590; *Miehle* v. *Scott & Scott*, 190 O. G. 1030; *Robinson* v. *Thresher*, 123 O. G. 2627; *Shreve* v. *Grissinger*. 202 O. G. 951; *Silverman* v. *Hendrickson*, 99 O. G. 445; *Sydeman* v. *Thomas*, 141 O. G. 866; *Warren Bros.* v. *Owosso*, 166 Fed. 309; *Westinghouse Co.* v. *New York Co.* 87 Fed. 882.

Mr. *William J. Belknap*, Mr. *Joseph H. Milans*, and Mr. *L. S. Bacon*, for the appellee, in their brief cited:

*American Stove Co.* v. *Detroit Stove Co.* 31 App. D. C. 304; *Becker* v. *Bird*, 44 App. D. C. 422; *Blackman* v. *Alexander*, 26 App. D. C. 541; *Cherney* v. *Clauss*, 25 App. D. C. 15; *Coffee* v. *Guerrant*, 3 App. D. C. 497; *Cooper* v. *Downing*, 45 App. D. C. 345; *Curtis* v. *Lindmark*, 37 App. D. C. 322; *Dashiell* v. *Grosvenor*, 162 U. S. 425; *Dunkley* v. *Beekhuis*, 39 App. D. C. 494; *Eastman* v. *New York*, 134 Fed. 845; *Emerson & Yoerg* v. *Riley*, 200 O. G. 284; *Fefel* v. *Stocker*, 17 App. D. C. 317; *Foote* v. *Wenk*, 118 O. G. 1366; *Gibbons* v. *Peller*, 28 App. D. C. 530; *Herman* v. *Fullman*, 107 O. G. 1094; 23 App. D. C. 259; *Lass & Sponenberg* v. *Scott*, 26 App. D. C. 354; *McArthur* v. *Mygate*, 31 App. D. C. 514; *McKneal* v. *Macey*, 106 O. G. 2287; *Mergenthaler* v. *Scudder*, 11 App. D. C. 264; *Monte* v. *Dunkley*, 46 App. D. C. 70; *Packard* v. *Lacing Stud Co.* 70 Fed. 66; *Schmidt* v. *Clark*, 32 App. D. C. 290; *Sherwood* v. *Drewson*, 29 App. D. C. 161; *Scott* v. *Fisher*, 145 Fed. 915; *Seeburger* v. *Dodge*, 24 App. D. C. 476; *Sendelbach* v. *Gillette*, 22 App. D. C. 168; *Schreve* v. *Grissinger*, 202 O. G. 951; *Turnbull* v. *Curtis*, 27 App. D. C. 567; *Westinghouse Air Brake Co.* v. *New York Air Brake Co.* 87 Fed. 882; *Williams* v. *Libermann*, 23 App. D. C. 223.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

In the opinion the Commissioner, distinguishing the original specifications of the parties, said: "Ficklen's patent states expressly that the reinforcing means are supported by the concrete out of contact with the roadbed. * * * It is plain that claims 1, 2, and 3 are all limited to reinforcing means which are supported by the concrete out of engagement with the earth roadbed. This is the force of the clause, 'reinforcing means embedded in and carried by and continuing along the upper portions of the edges of the concrete sections' of claim 1. Claim 2 of the patent is limited in the same way, and in addition specifies 'shoulders' formed in the concrete. Claim 3 specifies that the reinforcing means embedded in and carried by the concrete sections are set into the upper surfaces of the concrete sections. Baker's application as originally filed indicates 'the construction of expansion joints for concrete pavements in which the pavement or only the upper layer thereof is laid in sections with open joints between the sections.' The reinforcing plates are described as 'of suitable length and width to correspond to the cross section of the pavement.' It is proposed to place the plates in pairs suitably spaced apart upon the prepared foundations, so that their upper edges are on a level with the road and then filled in with concrete."

The Commissioner turned his decision granting Baker the right to amend his application by inserting figure 3a upon the concluding sentence in his original specification, as follows: "For the construction of expansion joints the plates are preferably made of a width to reach through the entire depth of a pavement, but it is optional to make them of lesser width where the character of the pavement permits."

In our opinion the case turns upon this decision of the Commissioner. It will not be necessary to concern ourselves with the issues of fact on the question of priority, nor are we confronted with the rule as to concurring opinions of the various tribunals of the Patent Office. In the interference proceedings, the lower tribunals adopted this decision of the Commissioner as the law of the case, and expressly refused to pass upon

the right of Baker to make the claims of the issue or to pass upon the question of whether or not Baker's original application disclosed the specific structure defined by the claims. We are reviewing, therefore, not three concurring decisions, but the single decision of the Commissioner. If Baker is not entitled to amend his specification by inserting figure 3a, Ficklen must prevail.

Reading the alternative construction as expressed in the sentence above quoted from the original Baker application upon his disclosure then made in figures 3 and 6, it is not difficult to understand what he had in mind. It should be remembered that Baker, the junior party, upon whom the burden rests, is here seeking to appropriate the claims of the senior party after they have gone to patent. What was in Baker's mind at the time he filed his original application is to be deduced from what he disclosed. A glance at the drawings of the respective parties shows not only the superiority of the Ficklen structure, but that the parties were moving in entirely different directions. What Baker had in mind, as disclosed in figure 6, was the creation of expansion joints by means of his metal plates extending through the concrete and resting on the road base. In his original specification he says: "In constructing the expansion joints I use metal wearing plates as D, which conform to the profile of the pavement and are of suitable length and width to correspond to the cross section of the pavement. Each plate is formed or provided with metal strips a, which are either integral portions cut out of the plate, or are separate strips secured thereto by riveting or otherwise. and which strips are bent to one side of the plate. By placing the plates in pairs suitably spaced apart upon the prepared foundation so that their upper edges are on a level with the road and with the strips extending outwardly, it will be seen that, in filling in the concrete, they will be wholly embedded in the concrete, and act as ties or anchors to hold and unite the plates with the concrete. After removing the spacing means from between the pair of plates, the joint then may be completed by filling in with tar, asphalt, or other suitable material in the usual manner."

But this is not the invention of the issue as stated and dis-

closed by Ficklen. In Ficklen the reinforcing plates "are embedded in and supported by the concrete section above and out of contact with the earth .roadbed, thus causing the reinforcement to form, in effect, a component part of the section, the face of the reinforcement within the expansion joint being flush with the face of the concrete section below the reinforcement." Ficklen was not creating an expansion joint, but protecting the surface of the concrete at the expansion joint.

We come now to the more difficult question of whether or not the claims of the issue may be read into Baker's original specification as disclosed by figure 3 of his drawings. It will be observed that the expansion plates extend a portion of the way through the pavement, and there is no expansion joint extending from the termination of the plates to the bottom of the pavement. Whether this form was intended for a double-layer concrete pavement, where the base is solid concrete and the upper layer in sections, does not appear. If so, the device shown by figure 3 would only differ from figure 6 in that the plates would rest on the concrete base instead of on the roadbed. Nowhere, either in Baker's specifications or his drawings, does he meet the claims of the issue by disclosing reinforcing means supported by the concrete out of contact with the roadbed.

It is significant that, after Baker filed his original application, he filed amended claims in November, 1910, which were rejected. He then sought to substitute a single claim in December, 1911, which was also rejected. Again, in January, 1913, he substituted a claim, which was rejected. All of these amendments were rejected upon reference to a patent to one Kieserling. Finally, in February, 1914, he asked for the following claim, which was allowed:

"In a pavement, the combination with curbs and a prepared foundation between said curbs, of sheet metal wearing plates extending from curb to curb with the lower edges thereof, bearing directly upon the foundation, said plates being arranged in spaced parallel relation to each other and having the lower edges thereof cut to form outwardly extending integral tongues that bear directly upon said foundation and serve functionally

as feet for supporting said plates in a vertical position at right angles to the foundation."

It will be observed that up to this date Baker was still working upon the disclosure of his original specification as shown by figure 6. Nowhere has he said or done anything which even indicates that he had a conception of the invention of the issue. This seems to conclusively dispose of the contention that the alternative means stated in the closing sentence of his original specifications should be construed to embrace the invention of the present issue. It was not until April 7, 1914, almost five years after Ficklen's filing date, that Baker, through his attorneys, prepared an additional claim which closed with the words, "said plates having integrally formed tongues that extend into the body of the pavement and support the plates in substantially upright position at an interval from the bottom of the pavement." Even this is but a nebulous description of the Ficklen invention. Baker gives no evidence of a clear conception of the invention of the issue until July 21, 1914, when he filed a substitute specification and claims, containing the counts of the issue. This was over one month after the issuance of the Ficklen patent.

Baker lays great stress upon what is known as the Detroit experiment, where he laid a large amount of concrete pavement in 1909, and where he claims to have installed his device. The only question we are here called upon to consider involves Baker's right to amend his application by the addition of claims corresponding to the counts of the issue, a question which can be determined only by reference to the specification and claims as originally filed. In this view of the case, it becomes immaterial whether the Detroit experiment amounted to a disclosure of the invention in issue, or not.

The case of *Manly* v. *Williams,* 37 App. D. C. 194, is controlling here. There, the court said: "An additional ground is advanced by counsel for appellant in this court. It is insisted that, inasmuch as appellee seeks to adopt the claims in issue and have them relate back to the date of his original application, before he is entitled to adopt the claims, it must clearly appear that the invention in issue was set forth in his

original application. It is vigorously argued that this does not appear from the original specification and claims of appellee. This appeal, we think, can be disposed of upon the latter point. * * * An examination of appellee's claims, specifications, and drawings, we think, discloses no conception by him of the exact thing here in issue. * * * It will be observed that, when appellant entered the field, appellee had apparently no conception of the necessity of conserving the leakage. His idea was to provide against leakage by replenishing the supply of oil in the tank. It is insisted by counsel for appellee that the word 'replenishing' is comprehensive enough to convey his conception of means for the collection of leakage; but, in the absence of anything in the context to indicate such a meaning, we cannot attribute this invention to appellee. In fact, the claims and specifications of appellee, up to the date of appellant's entry into the field, clearly indicate the contrary. When we consider appellee's refusal for more than two years to make the claims suggested, and his failure to embrace the idea in amendments during that period, it is apparent that he had no conception whatever of the invention embraced in the claims in issue until after appellant entered the field. Even then he was unable to so amend his claims as to intelligently express anything like a clear conception of the thing here in issue. The law is well settled that amendments will only be permitted to relate back to the date of the filing of the original application, where they can clearly be sustained on the claims and specifications as originally made. The law does not permit such an enlargement of the original specifications as will interfere with other inventors who have acquired intervening rights. 'Courts should regard with jealousy and disfavor any attempts to en-large the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into pub-lic use.' *Chicago & N. W. R. Co.* v. *Sayles,* 97 U. S. 554, 24 L. ed. 1053. The rule is the same as in reissue cases with re-spect to intervening rights. A patentee cannot, in a reissue application, so broaden his claims as to include an invention

made subsequent to the grant of his patent. ⁎ ⁎ ⁎ Appellee, in his original specification and the amendments thereof up to the time appellant entered the field, totally failed to make any claim for means for collecting leakage. If appellee had made any such claim there would be presented a question of fact as to its operation; but, in the absence of any such claim, the sole question here is whether he can now claim something which was not originally disclosed."

We are therefore of opinion that the amendment to Baker's application containing the counts of the issue cannot be sustained on the specification and claims as originally filed. The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.

A petition for rehearing was overruled April 19, 1918.

Mr. Justice McCoy, of the Supreme Court of the District of Columbia, sat with the court in the hearing and determination of this appeal, in the place of Mr. Justice Robb.